## In re Henderson.

### [No. 9,946. Filed June 1, 1917.]

1. MASTER AND SERVANT.—*Workmen's Compensation Act.—Construction.—Surgical and Hospital Service.—Determining Necessity.*—Under §25 of the Workmen's Compensation Act, Acts 1915 p. 392, providing that the employer shall furnish an attending physician for an injured employe for thirty days following the injury, and thereafter at the employer's option, "provided, however, unless otherwise ordered by the Industrial Board and in addition such surgical and hospital service and supplies as may be deemed necessary by said attending physician, or the Industrial Board," the proviso is primarily a limitation or qualification on what precedes, and this section lodges in the board and the attending physician all the authority therein given to determine the necessity for surgical and hospital service and supplies. p. 585.

2. MASTER AND SERVANT.—*Workmen's Compensation Act.—Construction.—Surgical and Hospital Service.—Authority to Furnish.*—Under §25 of the Workmen's Compensation Act, Acts

1915 p. 392, providing that the employer shall furnish an attending physician for an injured employe for thirty days following the injury, and thereafter at the employer's option, and in addition such surgical and hospital service and supplies as deemed necessary by the attending physician or Industrial Board there is no ' authority to furnish the surgical and hospital service and supplies at the expense of the employer except during the thirty-day period, and during such time thereafter as the employer at his election furnishes a physician.   p. 588.

3. MASTER AND SERVANT.—*Workmen's Compensation Act.—Construction.—Necessity for Surgical and Hospital Service.—Determination.*—Section 25 of the Workmen's Compensation Act, Acts 1915 p. 392, requiring the employer to furnish an injured employe such surgical and hospital service and supplies as may be deemed necessary by the attending physician or the Industrial Board, leaves with the board the final determination of whether such surgical and hospital services and supplies be furnished; and, if the attending physician fail or refuse to furnish, when authorized to do so, the necessary surgical hospital service, or the board should deem the services furnished unsatisfactory or inadequate, it may direct the furnishing of such surgical and hospital services as it adjudges to be proper and necessary under the circumstances, and the board may require the acceptance of such services by the injured employe, subject to the condition that during his refusal to accept the services he will be deprived of compensation provided in the act. p. 591.

4. MASTER AND SERVANT.—*Workmen's Compensation Act.—Surgical and Hospital Services.—Powers of Industrial Board.*—Under §25 of the Workmen's Compensation Act, Acts 1915 p. 392, providing that the employer shall furnish an attending physician for an injured employe for thirty days following the injury, and thereafter at the employer's option, "provided, however, unless otherwise ordered by the Industrial Board and in addition such surgical and hospital service and supplies as may be deemed necessary by said attending physician, or the Industrial Board," the board may relieve the employer from furnishing an attending physician during the first thirty days if in its judgment such service is unnecessary in the particular case, and it may, on proper showing, relieve the employe from the necessity of accepting the physician and services furnished. p. 592.

5. MASTER AND SERVANT.—*Workmen's Compensation Act.—Medical and Surgical Services.—Liability.*—Under §25 of the Workmen's Compensation Act, Acts 1915 p. 392, providing that the employer shall furnish an attending physician for an injured

employe for thirty days following the injury, and thereafter at the employer's option, "provided, however, unless otherwise ordered by the Industrial Board and in addition such surgical and hospital service and supplies as may be deemed necessary by said attending physician, or the Industrial Board," if an emergency arises for either of the services provided for in the act at a time when it is required to be rendered, the employer by mere delay in rendering the service cannot escape liability for any service which should and could have been rendered within the period during which the act makes it his duty to perform it; hence, if the board is of the opinion that the evidence shows that the emergency for the amputation of an employe's foot arose before the expiration of the thirty-day period, and that the amputation should and could have been performed before the expiration thereof, and that the employer was responsible for the delay that prevented the amputation before such expiration, the board can hold the employer liable for any surgical or hospital service and supplies that were, or might have been, furnished within such thirty-day period, though not provided until thereafter, and the board's determination of the question of fact is conclusive. p. 593.

From the Industrial Board of Indiana.

Certified Question of Law.

Proceeding under the Workmen's Compensation Act in the matter of one Henderson. Question of law certified by the Industrial Board. *Question answered.*

HOTTEL, C. J.—The appellant, Industrial Board, under §61 of the Indiana Workmen's Compensation Act (Acts 1915 p. 392), has certified for our determination a question of law based upon the following statement of facts: "On the 16th day of October, 1916, A was in the employment of B at an average weekly wage of $14.75; that on said date the employe, while engaged in the discharge of the duties of his employment, received a personal injury by an accident arising out of and in the course of his employment, requiring and resulting in the amputation of the left foot through the metatarsal bones; that the employer had actual knowledge of the accident at the time that it occurred, called

an attending physician and sent the employe to a hospital; that the employer had insured his compensation liability; that for some reason the employe's foot did not heal at the point of amputation and the employe had not recovered therefrom at the expiration of the first thirty days from the injury; that on the 28th day after the employe's injury both the employer and its insurance carrier served written notice upon the attending physician and upon the hospital that the employer would not be liable for any surgical and hospital services after the expiration of thirty days from the date of the injury; that at said time gangrene had developed in the employe's foot, which made both surgical and hospital services and supplies absolutely necessary after the expiration of the first thirty days from the date of injury; that the employe's condition was such at said time that he could not be removed from the hospital; that in order to save the employe's life it was then evident that it would be necessary within the course of four or five days to amputate the left foot above the ankle joint; that on the 29th day after the injury the employe filed his written application with the Industrial Board setting up the foregoing facts and asking the board to make an order requiring the employer to continue the surgical and hospital services and supplies beyond the first thirty days after his injury."

The question of law which we are asked to determine is whether upon the foregoing facts the Industrial Board has authority under the act, *supra,* "to require said employer to continue surgical and hospital services and supplies after the expiration of the first thirty days from the date of the injury."

The disposition of this question involves an interpretation and construction of §25 of said act, which provides as follows: "During the thirty days after

an injury the employer shall furnish or cause to be furnished free of charge to the injured employe, and the employe shall accept, and during the whole or any part of the remainder of his disability resulting from such injury, the employer may, at his own option, continue to furnish or cause to be furnished, free of charge to the injured employe, and the employe shall accept, an attending physician; provided, however, unless otherwise ordered by the Industrial Board, and in addition such surgical and hospital service and supplies as may be deemed necessary by said attending physician, or the Industrial Board.

"The refusal of the employe to accept such service when provided by the employer shall bar said employe from further compensation until such refusal ceases, and no compensation shall at any time be payable for the period of suspension unless in the opinion of the Industrial Board the circumstances justify the refusal, in which case the board may order a change in the medical or hospital service.

"If in an emergency on account of the employer's failure to provide the medical care for the first thirty days, as herein specified, or for other good reason, a physician other than that provided by the employer is called to treat the injured employe during the first thirty days, the reasonable cost of such service shall be paid by the employer subject to the approval of the Industrial Board."

It will be observed that the provision for "surgical and hospital service and supplies" provides such service "in addition" to the service of the attending

1. physician, and the authority to determine the necessity for such former service is lodged in the *attending physician and the Industrial Board,* and is found only in, or, to be more accurate, immediately following, the proviso which attempts to give such board

some discretion in the matter of the furnishing of the attending physician. The language of said section and the proviso therein, and the position of said proviso makes the section seem ambiguous, so that it is hard to determine just what the legislature intended or had in mind in the matter of providing for hospital service and supplies. There is, however, nothing in the language of the act that would warrant, or in any sense justify, an interpretation or construction of the section which would permit the proviso to in any way affect or qualify any part of the section which follows it, except as hereinafter indicated. In other words, the language "provided, however, unless otherwise ordered by the Industrial Board" is primarily a limitation or qualification on what precedes it, and the connection and meaning of what follows is probably made more clear by omitting it.

While the language of said section, however read, may be ambiguous and uncertain as to the discretionary authority and power intended by the legislature to be lodged in said board in the matter of requiring the employer to furnish an attending physician beyond the thirty-day period provided in said section, it seems to us that said language leaves no room for doubt that the legislature intended by said section to lodge in said board and the attending physician all the authority and power therein given and conferred in the matter of determining the necessity for "surgical and hospital service and supplies." Such an interpretation of said section is at least consistent with its language, when read without the proviso, and is in perfect accord and harmony with the spirit and purpose of the act when read and considered in its entirety. This is so because it was certainly within the clear purpose and intent of the legislature in the passage of said act, both in the interest of the injured employe and in the interest of the

employer, through whom it was contemplated and anticipated that the public generally should be made to help bear the burden resulting from the injuries to employes, that the injured employe should have prompt and efficient surgical and hospital service and attention, to the end that the seriousness of the consequences of his injury, both in extent and duration, should be reduced to a minimum; and certainly no one would be better qualified to judge or say when such services were needed than the attending physician. *Milwaukee* v. *Miller* (1913), 154 Wis. 652, 144 N. W. 188, L. R. A. 1916A 1, Ann. Cas. 1915B 847.

It is also manifest from the act, when read in its entirety, that the legislature, having in mind the necessity for a fair and just administration of said act by a disinterested board, which would protect alike the interested parties and the State or the public, created the Industrial Board and clothed it with such discretionary supervising authority and control as was thought necessary for the purposes indicated.

That the legislature had in mind the interests of the employer—through whose agency the public is supposed to be protected—as well as those of the injured employe, is evidenced by the fact that said section gives to such employer the right to furnish an attending physician of his own choosing and requires the employe to accept such physician, subject to the condition that if he refuses, without sufficient cause, the board may deny him the compensation provided by the act in question during the period of his refusal. The wisdom and fairness of such a provision as that just indicated is justified in other jurisdictions upon the ground that the employer is interested in a speedy and complete recovery of the injured party in order that it may be relieved from payment of compensation at the earliest moment possible. *Milwaukee* v. *Miller, supra; Keigher* v. *Gen-*

*eral Electric Co.* (1916), 173 App. Div. 207, 158 N. Y. Supp. 939.

The same reasoning authorizes the conclusion that a physician furnished by the employer would, in the interest of such employer, as well as of the employe, wisely use the discretion lodged in him, in the matter of determining the surgical and hospital service and supplies necessary in the particular case, to the end that the effects of the injury might be reduced to a minimum, and the disability removed at the earliest moment possible.   However, to safeguard and protect the injured employe and guard against the possibility of any abuse that might result from a discretion lodged wholly in a physician selected by the employer, the Industrial Board, by said section, is likewise given discretion and authority in the matter of determining when and what surgical and hospital service and supplies are deemed necessary.   This brings us to what seems to be the most difficult phase of the question presented for our consideration.

We have held, and correctly so we think, that whatever authority is given by the section in question in the matter of determining when surgical and hospital service and supplies may be required in the particular case, is lodged wholly with the attending physician and Industrial Board.   We now inquire when and to what extent such authority is given to such physician and board.   It will be seen that such section provides for the furnishing by the employer of an attending physician in two instances only, viz., during the thirty-day period when he is required to furnish such physician, and thereafter when he may at his option furnish such physician.   The additional service of a surgeon and hospital are limited to said periods and conditions.   There is no authority to furnish the lat-

ter service except during the period of the attendance of the physician, furnished as indicated.

If during the first thirty days after the injury the employer furnishes such physician, or, without cause, fails to furnish such physician, in either event the attending physician or the Industrial Board may during such period require surgical and hospital services for which the employer may be properly charged. However, after the thirty-day period no obligation rests on the employer to furnish an attending physician, and in our judgment the board has no authority or discretionary power by which it may require such a service after the expiration of said period, and hence, unless the employer elects to furnish such attending physician, the power of such board to require surgical and hospital service and supplies ends with the expiration of said thirty-day period. If, however, the employer, believing that he may hasten the recovery of the injured employe, and shorten the period of the disability for which he will be required to pay compensation, or if for any other proper reason, such employer elects to furnish such physician, he may do so, in which case said section requires the acceptance of such service on the part of the injured employe. This provision was unnecessary in so far as it attempts to confer upon the employer the right to voluntarily furnish said service. The presence, however, of said provision in said section is to our mind an express recognition by the legislature that a situation might arise where the employer would be convinced that a more speedy recovery of the employe and a shortening of the period of compensation might result by continuing the service of the attending physician; and hence that in his own interests such employer might desire to voluntarily continue to furnish such service beyond the period in which he was required to furnish it; that while the employer might, without

the act, voluntarily tender such service, it would avail him nothing unless the employe would accept it; and hence the main purpose of the provision doubtless was to require the acceptance of such service by the employe when voluntarily tendered by the employer. In such provision there may have also been a purpose and intent to give such right to the employer with a view of making the expense, when so incurred, a proper item of charge against the insurance provided for in said act. However, whatever may have been the purpose and intent of such provision, we think it manifest that during the continuance of the service of such attending physician, furnished and accepted under said provision, both he and the Industrial Board are given the right to determine the necessity for hospital and surgical service and supplies. It seems to us that this must be so, because the only theory upon which the provision requiring the employe to accept the services of the physician tendered by the employer is that above indicated. The court must assume that it is upon such theory that the employer voluntarily continues to furnish such service.

By continuing to furnish the service he recognizes its necessity and expresses a desire that it be accepted in his interests as well as in the interests of the employe. He thereby asks for and obtains, it may be, a forced acceptance of the service; and hence should be held to acquiesce in all that such a service, wisely and properly rendered, carries with it, including any surgical or hospital service. He asks and obtains the acceptance of the service of the physician, knowing that the law under which it is obtained lodges in the physician, and the Industrial Board, under whose supervision he must act, the power and authority to require such surgical and hospital service and supplies as either may deem necessary. It therefore would seem to follow as a matter of course that the legislature intended that so long

as the employer continues to exercise the option which the statute gives to him—to voluntarily furnish the injured employe a physician—if either such physician or the Industrial Board should determine that any surgical or hospital service or supplies are necessary in such case, the employer should be liable therefor. In this connection it should be stated that the language of said section, when considered in its entirety, and when read in the light of other provisions of the act, evidences an intention on the part of the legislature to leave with said board, within the limits indicated, the final determination of whether said surgical and hospital services and supplies be furnished; that is to say, if the attending physician should, in either of the cases *supra,* where we have said he was authorized to do so, fail or refuse to furnish the necessary surgical or hospital service, or should furnish a service which such board regards as unsatisfactory or inadequate, under the facts and circumstances of the particular case, the board is given a supervising discretion and authority to permit or direct the furnishing of the surgical and hospital service that it thinks proper and necessary under the facts of the case, and its determination of the question binds the employer to pay for such service.

Likewise, if the employe refuses to accept the service in either of the cases indicated, the board has authority, on proper application and showing, to determine whether such refusal is justified and if it deems proper may require his acceptance thereof, subject to the condition that during the continuance of his refusal to accept such service he will be deprived of the compensation provided in said act. We assume also that, even though the attending physician, in the cases indicated, had determined that such service was necessary, the board might, on proper application and showing by the

employer, determine to the contrary, and thereby relieve the employer from liability for any such service furnished after the board had so determined.

Recurring to the effect of said proviso in said act, we think its only effect is to recognize and apply to the preceding provisions of said section the general supervising power, herein indicated as lodged in said Industrial Board and makes more certain the intent of the legislature to clothe the board with the authority to determine whether there is an occasion or necessity for an attending physician during the whole or any part of the thirty-day period, during which the section requires such service to be furnished, and whether the employe shall be required to accept the physician furnished by such employer during or after the thirty days. In other words, it seems to us to clearly appear from said section, when read in its entirety and interpreted in connection with and in the light of other sections of the act, that it was intended that the board should have the power to relieve both employer and employe from any hardship that might result from the mandatory features of said section; that is, the employer might be relieved from furnishing an attending physician during the first thirty days if in the judgment of the board such service was unnecessary in the particular case, and on the other hand, the employe might on proper showing be relieved from accepting the physician furnished by the employer, whether furnished during the thirty-day period or voluntarily furnished thereafter. Such is the extent of the discretionary power conferred on the board by said proviso, and, as before indicated, the proviso has no effect on the provisions which follow it authorizing the furnishing of surgical and hospital service, except as it may tend to show the general intent on the part

of the legislature to lodge in the board the discretionary and supervisory authority and power. To the extent that any surgical and hospital service is authorized by said act, such discretionary power to supervise it is lodged in the board, regardless of said proviso.

In view of the facts submitted in this case, indicated *supra,* we deem it proper to say that, if an emergency arose for either of the services provided for in 5. said act at a time when the same was required to be rendered under said act, the employer by mere delay in rendering the service could not escape liability for any service which should have been and could have been rendered within the period during which the act makes it his duty to perform the service.

So, if in this case the Industrial Board is of the opinion that the evidence before it shows that the emergency for the amputation of the employe's foot arose before the expiration of said thirty-day period, and that the amputation should have been and could have been performed before the expiration thereof, and that the employer was responsible for the delay that prevented the amputation before the expiration of such period, the board would be authorized, under the section of the act in question, in holding the employer liable for any surgical or hospital service and supplies that were in fact furnished or might have been furnished within said period, notwithstanding the employer's said notice, and notwithstanding such service may not have been in fact furnished until after the expiration of said period. The board's determination of the question of fact is, under said act, conclusive and binding on this court. Except as indicated, the Industrial Board has no discretionary power or authority in the matter of holding the employer liable for the service involved.

Caldwell, Felt, Batman and Dausman, JJ., concur. Ibach, P. J., dissents.

NOTE.—Reported in 116. N. E. 315. Workmen's compensation: allowance to injured employe for medical and hospital services, L. R. A. 1917D 178.