UNION HOSPITAL *v.* S. P. BROWN & COMPANY ET AL.

[No. 16,102.   Filed December 16, 1937.]

*Adamson, Blair & Adamson,* and *Thomas P. Gallagher,* for appellant.

*White, Wright & Boleman, William H. Deniston,* and *George C. Forrey, III,* for appellees.

WOOD, J.—On the morning of September 1, 1936, one Merle Smedley, an employee of the appellee S. P. Brown and Company suffered a compensable injury by accident arising out of and in the course of his employment by said company. Smedley's injury created an emergency, demanding immediate medical treatment, hospital and nurse's services and supplies. The appellee S. P. Brown and Company at the time in question did not have a regularly employed physician and surgeon to treat its injured employees; nor did it have a designated hospital to which they were to be taken for treatment, nurse's services and supplies. Under the circumstances, Smedley was immediately removed to the appellant's hospital, where he remained continuously from the date of his injury until May 26, 1937, the date upon which this cause was heard before a single member of the Industrial Board, and received necessary hospitalization furnished by appellant. Smedley's neck was broken in the accident causing paralysis of the body below the neck. It is agreed that this condition demanded constant

medical treatment, hospitalization and nurse's services from the date of his injury.

During the first thirty days after Smedley's injury the president of S. P. Brown and Company and the local manager of said company in the city of Terre Haute, Indiana, called at the hospital and in conversation with hospital authorities and with the physician and surgeon treating Smedley, and the nurse caring for him expressed great solicitude for Smedley, and instructed them not to spare anything necessary for his care and recovery and that the bills would be taken care of.

No time limit was set by the appellee S. P. Brown and Company during which the appellant should furnish hospitalization for Smedley or during which said appellee would continue to pay the bills. The record shows that after the expiration of the first sixty days following Smedley's injury the local manager and the president of said company again visited Smedley in the hospital and on that occasion inquired of the nurse in attendance if he was having all of the necessary care. The appellee Liberty Mutual Insurance Company was the compensation insurance carrier of its co-appellee.

The appellee Liberty Mutual Insurance Company paid the appellant for hospital services rendered Smedley for the first sixty days after his injury. Both appellees have refused to pay appellant for services rendered by it since the expiration of said sixty-day period. The appellant filed its application for compensation for hospital services and supplies furnished by it to Smedley after the expiration of the first sixty days following his injury to May 26, 1937, with the Industrial Board asking said board to adjust the amount thereof and order its payment by appellees. The reasonableness of appellant's charge is not questioned by the appellees in any way. The facts above summarized appear in the record and are undisputed.

Upon a hearing before it, the full Industrial Board made an order dismissing appellant's application for adjustment of compensation of its claim upon the ground that it did not have jurisdiction. Appellant appeals from this action assigning as error for reversal that the award of the full Industrial Board is contrary to law.

It is appellant's contention that under the facts presented by the instant case their claim for hospital services falls within that class of claims over which the Industrial Board has jurisdiction for the purpose of adjustment with authority to order its payment, pursuant to the provisions of the Indiana Workmen's Compensation Act of 1929. The appellee's contention is, that any agreement entered into or promises made by the employer to defray the expense of hospitalization of its employee following the first sixty days from date of injury is an independent contract apart from and outside said act and that if appellant has any claim against appellees its remedy for enforcement is by an action at law.

These two antagonistic contentions cast upon this court the duty of ascertaining the purpose and intent of the legislature in enacting the Workmen's Compensation Act of 1929, and as far as is possible, give to the language in which said act is couched such an interpretation as will give effect to such purpose and intent. Those sections of the act controlling the respective rights of the parties, to which we must give attention, are Sections 25, 26, and 72.

A brief examination of former workmen's compensation acts passed by our legislature and the construction and application placed thereon by this court in instances where the facts and circumstances were quite analagous to those in the case under examination will be of some assistance. The first workmen's compensation act in Indiana was passed in 1915. Chapter 106, Acts

1915, p. 392. Sec. 25 of that act provided among other things, that, "During the first thirty days after an injury the employer shall furnish or cause to be furnished free of charge to ·the injured employee, and the employee shall accept, and during the whole or any part of the remainder of his disability resulting from the injury, the employer may, at his own option, continue to furnish or cause to be furnished, free of charge to the employee, . . . an attending physician"; Thereafter the Industrial Board in the case of *In re Kelly* (1917), 64 Ind. App. 594, 116 N. E. 307, certified to this court a statement of facts and a question of law for its decision and determination. In that case the employee received injuries causing complications resulting in blood poisoning. At the expiration of thirty days from the date of the injury the employee was in such a serious condition that continual medical treatment was absolutely necessary to save his life. The employer expressly ordered the physician in attendance to continue treatment of the employee until he recovered from the injury. Immediately prior to the expiration of the first thirty days the insurance company of the employer served notice upon both the employer and employee that it would not pay for any treatment of the employee beyond the first thirty days. The physician continued the treatment of the employee beyond the first thirty days until he had recovered from his injury. It was admitted by all parties that the physician's charge for treatment beyond the first thirty days was reasonable and a charge that prevailed in the community in which the employee resided, for similar treatment of injured persons of a like standard of living, when such treatment was paid for by the injured person. The physician filed a claim for his services with the Industrial Board and asked that it be allowed and approved against both the employer and insurance carrier. The certified question of law was:

"Upon the facts above stated is the physician entitled to have his claim approved as against the compensation carrier?"

In answering this query, this court, after quoting or setting out the substance of several sections of the workmen's compensation act of 1915, applicable to the facts presented, said: "While the employer would be liable for authorized services independent of the statute, the legislature nevertheless incorporated into the act the provision recognizing the voluntary employment of physicians by employers to continue treatment of injured employees beyond the period of the first thirty days after the injury, and it is reasonable to believe that it was so incorporated to serve some purpose in carrying into effect the intent of the legislature.

"Here there can be no doubt that an injured employee, the employer and the insurance carrier are all within the purview of the act under consideration. Such being the case, the statute should be liberally construed to promote the ends intended to be secured by its enactment. Effect should be given to all parts of the statute where it is reasonably possible so to do in harmony with the spirit and purpose of the whole act. *Fort Wayne, etc., Supply Co.* v. *Pfeffer* (1915), 60 Ind. App. 615, 111 N. E. 192; *Greenbush Cemetery Ass'n* v. *Van Natta* (1911), 49 Ind. App. 192, 198, 94 N. E. 899; *Hyland* v. *Rochelle* (1913), 179 Ind. 671, 676, 100 N. E. 842, 845, 847."

Then after discussing the evident purpose and intent of the legislature in passing the act, as therein expressed, continuing its opinion, said (*In re Kelly, supra,* p. 599) : "With these observations in mind, it becomes apparent in exercising the option of providing a physician beyond the first thirty days after injury, in cases of his own selection, the employer may be actuated by sound business principles, which operate not only to the

advantage of the injured employee but also to the advantage of the employer and likewise in many instances to the advantage of the insurance carrier. Thus it will be seen that, while in the employment of a physician to render services beyond the compulsory thirty days provided by the statute is voluntary on the part of the employer, his action may nevertheless rest upon purely business considerations, entirely independent of any charitable or humanitarian motives.

"The legislature apparently recognized the difficulty of fixing an arbitrary limit for the period of medical or surgical treatment that would be satisfactory and equitable in every case and by recognizing such voluntary continuation of such services by the employer in cases appealing to his judgment, thereby made provision to encourage and extend the beneficial results intended to be secured by the act, beyond the compulsory provisions of the law. To recognize such voluntary employment and to link it up with other provisions of the act which have very positive and definite results depending upon the acceptance or rejection of such assistance by the employee, was evidently intended to encourage employers to further the practical and beneficial ends sought to be secured by such law.

"We then have a law which seeks to encourage employers to carry out and extend the beneficial and practical results made possible by the act, and it would be unreasonable to say that the broad and comprehensive provisions relating to insurance were not intended to cover the expense or liability incurred by the employer in so doing. To hold otherwise would be to say that the legislature intended the law so to operate but did not intend to make provision for the employer to fully insure his business and provide the necessary indemnity to cover his liability in helping to carry into effect and

make practical and efficient the Indiana Workmen's Compensation Act."

And concluded its opinion with this language (p. 601) : "To give effect to this law and secure the ends that are apparent from its provisions, considered in their entirety, we must of necessity depart from the rules of law and much of the reasoning employed in dealing with negligence cases. The purpose or intent of this law is different from that which obtains in dealing with questions of duty and fault and the legal right to recover damages.

"Under this act we deal with facts viewed from the humanitarian standpoint of promoting both social and economic welfare which invoke only the remedies and afford the relief provided by the statute independent of other laws. So far as we have ascertained this precise question has not been decided under any statute substantially like the act now under consideration. As we interpret the law, the question certified to this court by the Industrial Board should be, and is, answered in the affirmative."

This opinion of the court was announced on June 1, 1917.

On the same day this court announced its opinion in the case of *In re Meyers* (1917), 64 Ind. App. 602, 116 N. E. 314, in which the Industrial Board had certified to the court a statement of facts and a question of law for its decision and determination. The facts in the case at bar bear such a close resemblance to the facts in the Meyers case, and the reasoning of the court in arriving at an answer to the question submitted therein, is so applicable to this case as to be determinative thereof.

On June 1, 1917, the court announced its opinion in the case of *In re Henderson* (1917), 64 Ind. App. 581, 116 N. E. 315, in which the Industrial Board had certified to the court a statement of facts and a question of

law for its decision and determination. In that case the facts were quite analogous to those presented by the record before us. The court followed very closely the same reasoning and arrived at substantially the same result announced in the cases of *In re Kelly, supra,* and *In re Meyers, supra.*

On June 7, 1917, this court announced its opinion in the case of *Kirkhoff Bros.* v. *McCool* (1917), 64 Ind. App. 645, 116 N. E. 439, in which the facts were practically the same as the facts in the case of *In re Kelly, supra,* and in which case the Industrial Board had entered an order adjusting and allowing a physician's claim for services against the employer and the insurance carrier from which they appealed. The court affirmed the award of the Industrial Board on the authority of *In re Kelly, supra.*

On June 7, 1917, this court announced its opinion in the case of *Born and Co.* v. *Durr* (1917), 64 Ind. App. 643, 116 N. E. 428, in which it held that the Industrial Board did not have authority under Section 25 of the Workmen's Compensation Act of 1915, upon application of the injured employee, to order that an attending physician or surgeon and hospital services and supplies be furnished such employee at the employer's expense after the expiration of the first thirty days following the injury.

The decisions of this court in the cases of *In re Kelly, supra, In re Meyers, supra, In re Henderson, supra,* and *Kirkhoff Bros.* v. *McCool, supra,* in their scope and effect in the administration and application of the Workmen's Compensation Act have never been overruled or limited in any manner since these pronouncements, and are therefore controlling precedents in this case.

There are other circumstances connected with the history, development and passage of the workmen's compensation legislation in this state which are impressive

and influential in leading us to the ultimate conclusion that the construction placed upon and the applications made of the sections of the Workmen's Compensation Act of 1915, by this court, in the four cases above cited were in harmony with the purpose and intent of the legislature when it first passed the act in 1915.

In 1919 the legislature, with knowledge of the decisions of this court in the last four cases referred to, by Chapter 57, Acts 1919, p. 158, amended thirty-one sections of the Workmen's Compensation Act of 1915, among which was Section 25, now under consideration. It is worthy of note that in said Section 25 the legislature of 1919 included this provision: "And, during the whole or any part of the remainder of the period of disability or impairment resulting from the injury, the employer may continue to furnish such physician, services and supplies"; being substantially the same language, subject to the same interpretation and containing the same legal import as that contained in the Act of 1915, and the legislature in no way evinced any desire or intention to limit the force or effect of the interpretation and application of the language of the act contained in the decisions in the Kelly, Meyers, Henderson, and Kirkhoff cases, *supra*. But as a manifestation of the intent of the legislature of 1919, to limit and restrict the effect of the decision of this court in its construction and application of said Section 26 in the case of *Born and Co.* v. *Durr, supra,* and to broaden the power and authority of the Industrial Board, it inserted into Section 25 this provision, "If, by reason of the nature of the injury or the process of recovery treatment is necessary for a longer period than thirty days, the Industrial Board may require the employer to furnish such treatment for an additional period, not exceeding thirty days."

The legislature of 1929, see Chapter 172, Acts 1929,

p. 536, enacted a new workmen's compensation act to be known as "The Indiana Workmen's Compensation Act of 1929," in which it repealed the act of 1915 and all amendments thereof or other acts supplemental thereto, except as in the act of 1929, otherwise provided. None of the exceptions have any application in this case. It is significant that in the passage of the act of 1929, the legislature incorporated Section 25 of the act of 1915, as amended by the act of 1919 verbatim, except that it deleted from the last sentence in the second paragraph of said Section 25 the words, "unless in the opinion of the Industrial Board, the circumstances justify such refusal." Section 26 of the Act of 1929, which provides that the pecuniary liability of the employer for medical, surgical, hospital and nurses' services shall be limited to the charges prevailing in the same community for similar service to injured persons of like standard of living when such service is paid for by the injured person, is in substantially the same language contained in Section 26 of the act of 1915. Section 65 of the act of 1929, providing that fees of attorneys and physicians and charges of nurses under the act, shall be subject to the approval of the Industrial Board is in the same language as the same section in the act of 1915, as amended by the act of 1919.

The language of Section 72 of the act of 1929 is identical with the language of Section 73 of the act of 1919 which amended section 73 of the act of 1915, and also contained within its terms the provisions of Sections 74 and 75 of the act of 1915. Among other things said Section 72 provides: "That the filing of a policy form by any insurance company or reciprocal insurance association with the Industrial Board for approval shall constitute on the part of such company or association a conclusive and unqualified acceptance of each and all of

the provisions of this act, and an agreement by it to be bound thereby.

"All policies of insurance companies and of reciprocal insurance associations, insuring the payment of compensation under this act, shall be conclusively presumed to cover all the employees and the entire compensation liability of the insured.

"Any provision in any such policy attempting to limit or modify the liability of the company or association issuing the same shall be wholly void.

"Every policy of any such company or association must contain the following provisions:

(a) The insurer hereby assumes in full all the obligations to pay . . . hospital services, hospital supplies, . . . imposed or *accepted by the insured* under the provisions of 'The Indiana Workmen's Compensation Act.' (Our italics.)

"(b) That this policy is made subject to the provisions of 'The Indiana Workmen's Compensation Act,' and the provision of said act relative to the liability of the insured to pay . . . hospital services, hospital supplies, . . . for said employees, the acceptance of such liability by the insured, the adjustment, trial and adjudication of claims for such . . . hospital services, hospital supplies, . . . and the liability of the insurer to pay the same are and shall be a part of this policy contract as fully and completely as if written herein.

"(c) That, as between this insurer and the employee, notice to or knowledge of the occurrence of the injury on the part of the insured (the employer) shall be notice or knowledge thereof, as the case may be, on the part of the insurer; that the jurisdiction of the insured (the employer) for the purpose of 'The Indiana Workmen's Compensation Act,' shall be the jurisdiction of this insurer, and this insurer shall in all things be bound by and shall be subject to the awards, judgments and de-

crees rendered against the insured (the employer) under said act.

"(d) That this insurer will promptly pay to the person entitled to the same, all benefits conferred by 'The Indiana Workmen's Compensation Act,' including . . . hospital services, hospital supplies, . . `. that may be awarded or agreed upon under said act; that the obligation of this insurer shall not be affected by any default of the insured (the employer) after the injury or by any default in giving of any notice required by this policy, or otherwise; that this policy is and shall be construed to be a direct promise by this insurer to the person entitled to . . . fees for hospital services, charges for hospital supplies, . . . and shall be enforceable in the name of such person.

"That all claims for . . . hospital services, hospital supplies, . . . may be made directly against either the employer or the insurer or both, and the award of the industrial board may be made against either the employer or the insurer or both."

When the legislature of 1929 re-enacted the Workmen's Compensation Act, it is presumed that it had the decisions of this court in the Kelly, Meyers, Henderson and Kirkhoff cases in mind. *Harter* v. *Board* (1917), 186 Ind. 301, 116 N. E. 304; *Town of Jasper* v. *Cassidy* (1913), 53 Ind. App. 678, 102 N. E. 278. Nevertheless the legislature did not limit the force or effect of the interpretation and application of the language of the act contained in said cases. Repeated re-enactments of these features of the Workmen's Compensation Act after their construction must be deemed a legislative adoption of the construction thus given it. *State ex rel.* v. *Miller* (1923), 193 Ind. 492, 141 N. E. 60; *Thompson* v. *Mossburg* (1923), 193 Ind. 566, 139 N. E. 307.

If we follow the precedents established by this court

as repeatedly approved and adopted by our legislature, we must hold that the full Industrial Board had full power and authority under the facts and circumstances in the case at bar, to approve and adjust appellant's claim for hospital services and supplies.

Appellees cite and rely almost exclusively upon the case of *National, etc., Co.* v. *Sullivan* (1920), 73 Ind. App. 442, 126 N. E. 494. Insofar as the opinion in that case is in conflict with the opinion in the case at bar, it is overruled.

The award of the full Industrial Board is reversed, with instructions to assume jurisdiction of appellant's application for approval of its charges for hospital services and supplies, and for such further action in the premises as the board may find the facts to justify.

Kime, J. concurs.

Curtis, Laymon, JJ., dissent.