INTERNATIONAL DETROLA CORPORATION *v.* HOFFMAN

[No. 28,276. Filed February 4, 1947.]

*Jones, Obenchain & Butler,* of South Bend, for appellant.

*Henry L. Humrickhouser,* of South Bend, for appellee.

STARR, J.—The Industrial Board of Indiana granted relief under the Workmen's Compensation Act to the appellee upon his application therefor. Upon a petition for review of such award the same was affirmed by the Appellate Court. We granted the appellant's petition to transfer to this court.

The application of appellee upon which the award in question is based is an application for review on account of change of conditions on the board's form No. 14. This application was filed on September 20, 1945, which omitting caption, signature and verification is substantially as follows:

"In October, 1943, an award was duly made awarding compensation to Charles L. Hoffman from International Detrola Corp. on account of an accidental injury on the 13th day of Sept., 1943, to Charles L. Hoffman arising out of and in the course of his employment. Said employer and employee have disagreed relative to the continuance of payments under said award.

"6. Said injury has resulted in a permanent partial impairment. T. 7-10."

Appellant contends, first, that appellee's application for compensation for partial impairment being filed more than two years after the accident, was filed too late; and, second, that the finding of the board is not sufficient because it failed to find that the permanent partial impairment resulted from the temporary total disability.

It was stipulated that on September 14, 1943, the appellee sustained certain injuries as the result of an

accident arising out of and in the course of his employment by the appellant; that on October 1, 1943, the parties entered into a compensation agreement which was approved by the industrial board by which the appellant agreed to pay appellee compensation for temporary total disability from September 23, 1943, until terminated in accordance with our Workmen's Compensation Act; that on December 13, 1943, appellee returned to work but his temporary total disability recurred on May 14, 1944; that a second compensation agreement covering payments for temporary total disability was entered into and approved by the board and finally, that the recurred disability terminated and appellee returned to work on January 25, 1945.

The evidence in this case is substantially as follows: the appellee testified that he went back to work the day after the injury; that during the course of his work on that day he fell unconscious and was taken to the hospital where he remained 11 days then went home where he remained in bed two weeks; that during all the time of his first lay off except the first two weeks, he went to the doctor two or three times each week and during that time he was troubled with headaches but with no spells of unconsciousness; that from the time of his second lay off until about the first of January, 1945, he was bothered with black-out spells during which he became unconscious and also during that period he suffered a "sort" of paralysis of the right shoulder and that for four or five days during his second lay off he could not turn over in bed, suffered headaches all the time and was quite nervous; that the black-out spells have quieted down but in the last two months they have come back.

Dr. Metcalfe testified on behalf of the appellee that

he treated the appellee from July 12, 1944, to the date of the hearing; that by the end of August, 1944, he had a feeling that appellee was suffering from post-traumatic epilepsy caused by the injury suffered at the time of the accident to the central nervous system; that the first seizures of epilepsy such as appellee had are not apt to occur so long as the patient is in bed; that in his opinion the tendency or capacity to suffer epilepsy has existed from the beginning and that he has essentially been impaired continuously.

Dr. Reed, on behalf of the appellant, testified that in his opinion the appellee was suffering from obsessive compulsive psychoneurosis; that the appellee has an obsessive compulsive personality; that such personalities are characterized by seriousness of purpose and high rigid ethical standards; that it is difficult for such individuals to be tolerant with themselves or others and have very definite notions of right and wrong; that they attempt to cope with insecurity by acquiring more and more; that such a personality makes for a very ambitious person; that if such a personality is frustrated by some episode that blocks this flow or drive of emotion he develops neurotic symptoms such as anxiety, which emotional conflict is converted into physical symptoms such as the symptoms complained of by the plaintiff, and may result in symptoms of extremely divers and occasionally diffuse nature. The doctor also testified that in his opinion the injury was the episode which set in motion the mechanism which led to the appellee's present condition by starting the symptoms of the obsessive compulsive psychoneurosis from which he now suffers and that this condition is permanent.

Dr. Elliott testified for the appellant that he first treated appellee on September 15, 1943, when he was

in the hospital; that appellee was discharged from the hospital September 25, 1943, and during the time he was there he saw him daily and continued to see him until Dr. Metcalfe took over. Dr. Elliott's diagnosis of the appellee's injury at the time he was in the hospital was concussion of the brain. He stated that at the time he left the hospital he was fairly well; that when he went back to work the first time he was treating him for his nerves and he seemed to be making improvement; that he now has a nervous condition and from the history of the case he thinks the impairment has been from the time of the accident.

The Appellate Court in its opinion in this case stated that the board had failed to find that the permanent partial impairment resulted from the total temporary disability but due to the fact that no other finding is possible under the evidence it would consider the board's finding as amended. With this we cannot agree. The Appellate Court could not perform the administrative act of finding an ultimate fact in the first instance or consider the findings as amended and it was error so to do. The statute does not contemplate that the functions of the board may be assumed by the courts. *Cole* v. *Sheehan Construction Company* (1944), 222 Ind. 274, 53 N. E. (2d) 172. Furthermore, we are unable to find any evidence which would sustain such a finding, nor is the same involved in this case. Counsel for each party conceded in the oral argument of this case a total absence of such evidence. The application was tried upon the theory that it was for a permanent impairment growing out of the accident and not as an impairment growing out of or resulting from the total disability.

The application filed herein by the appellee was suffi-

cient to admit proof of an impairment which resulted from the accident. Permanent impairment was not included in the original proceedings or award. *Switow Theatrical Company* v. *Humphrey* (1942), 112 Ind. App. 221, 44 N. E. (2d) 213. The case might have been started as a new application for compensation. *Pettiford* v. *United Dept. Stores* (1935), 100 Ind. App. 471, 196 N. E. 342; *Sewell* v. *Terre Haute Brewing Co.* (1936), 102 Ind. App. 373, 200 N. E. 734. In either instance pursuant to § 40-1224, Burns' 1940 Replacement the application had to be filed within two years after the injury.

Under said § 40-1224 of our statutes the term "injury" is construed to be a compensable injury and where the disablement or compensable injury does not occur simultaneously with the accident producing it the claim for compensation may be filed within two years after the resulting injury develops or becomes apparent, and must be filed within the latter time, otherwise it is barred. *S. G. Taylor Chain Co.* v. *Marianowski* (1932), 95 Ind. App. 120, 182 N. E. 584; *Muehlhausen Spring Co.* v. *Szewczyk* (1937), 104 Ind. App. 161, 8 N. E. (2d) 104; *Farmers Mut. Liability Co.* v. *Chaplin* (1943), 114 Ind. App. 372, 51 N. E. (2d) 378, 51 N. E. (2d) 896.

The ailment involved in this case has to do with the mind and nerves of the appellee and can only be diagnosed by symptoms. In fact the experts disagreed as to appellee's ailment except as to its permanency. There was no physical evidence upon which the experts could base a diagnosis. Right and justice dictate that where an ailment such as we have here is latent or progressive in character and results in permanent impairment such impairment should

become compensable at the time it is reasonably discoverable that a compensable injury has been sustained, and the time within which the employee should file his claim should not begin to run until he knows or should in the exercise of ordinary care have known that he has a permanent impairment. *Baldwin* v. *Scullion* (1936), 50 Wyo. 508, 62 P. (2d) 531; *Associated Indem. Corp.* v. *Ind. Acc. Com.* (1945), 71 Cal. App. (2d) 820, 163 P. (2d) 771. For a rather exhaustive note on this subject see 108 A. L. R. 316.

Due to the fact that this claim was filed more than two years after the accident it was necessary for the appellee to prove when his injury became compensable and for the board to make a finding fixing said date which it has failed to do. This finding is jurisdictional. *Ben Wolf Truck Lines* v. *Bailey* (1939), 107 Ind. App. 52, 22 N. E. (2d) 887; 78 A. L. R. 1294 Note.

The judgment of the Appellate Court is reversed with instructions to remand this proceedings to the Industrial Board of Indiana with directions for that board to determine the date of appellee's impairment and to receive additional evidence upon that issue if either party requests a right to so introduce the same and to make a finding or findings and enter an award accordingly.

NOTE.—Reported in 70 N. E. (2d) 844.